FRANK H. CONNER COMPANY v. SPANISH INNS CHARLOTTE, LIMITED, A
NORTH CAROLINA LIMITED PARTNERSHIP, EMIL BALL, JERRY M. WHIPPER-
FURTH, RICHARD R. HOLCHEK, AND R. C. BENSON, INDIVIDUALLY AND AS
GENERAL PARTNERS; ARCHIE C. WALKER, AS TRUSTEE AND WACHOVIA
REALTY INVESTMENTS, AN UNINCORPORATED BUSINESS TRUST, WILLIAM
W. TENNENT, III, TRUSTEE, AND UNITED LEASING CORPORATION, AND
WACHOVIA MORTGAGE COMPANY

No. 19

(Filed 17 April 1978)

1. Laborers' and Materialmen's Liens § 1— lien effective from date of surveying
   work

   A contractor's lien for the construction of a motel, arising under Article 2,
   Part 1, N.C. G.S. 44A-7 through -13, prior to its 1975 Amendment, related back
   and took effect from the date of the furnishing of services for the partial clear-
   ing and the on-site surveying and staking of the boundary lines of the building
   to be constructed by the contractor.

2. Laborers' and Materialmen's Liens § 1— surveying and staking lines of
   building—"labor" subject to lien

   The partial clearing, surveying and staking of the lines of a building prior
   to its construction was "labor" under G.S. 44A-8 and thus was subject to a
   laborers' and materialmen's lien, and defendants' contention that "labor" in the
   statute must be construed to read "manual, unskilled work of an inferior and
   toilsome nature" is unacceptable, since the Supreme Court has previously
   defined a mechanic or laborer as "a person skilled in the practical use of tools;
   a workman who shapes and applies material in the building of houses or other
   structures mentioned in the law . . ."; the definition urged by defendants
   would eliminate from the scope of the statute much skilled construction work
   clearly intended by the 1969 enactment of G.S. 44A-8 to be within its range;
   and if defendants' definition of labor were accepted, an impermissible burden
   would be placed on the contractor to keep separate records regarding that
   work which is "labor" and that work which is not.

3. Laborers' and Materialmen's Liens § 1— lien for surveying work—improve-
   ment of realty

   G.S. 44A-10, the accrual statute for laborers' and materialmen's liens, im-
   plies that there be a visible commencement of the improvement in question,
   and the partial clearing of the site and the staking of the outlines of the
   building constitute a visible commencement of an improvement sufficient to
   put a prudent man on notice that a possible improvement is underway and

that the property might be subject to a lien under G.S. 44A-8; therefore, plaintiff had a lien under G.S. 44A-8 for the balance due under its contract with defendant Spanish Inns for the construction of a motel, and the clearing and staking of building lines constituted the "first furnishing of labor . . . at the site," so that plaintiff's lien related back to and took effect from the date this labor was first performed.

**4. Arbitration and Award § 7— persons not parties in arbitration proceedings — award binding**

Defendants were bound by an arbitration award fixing the amount of plaintiff contractor's laborers' and materialmen's lien on defendant owner's motel, though defendants were not parties to the arbitration proceedings and the earlier civil action by plaintiff for the confirmation of the arbitration award, since defendants did have an opportunity to be heard in the present civil action to enforce the lien.

**5. Rules of Civil Procedure § 56.2 — summary judgment — burden of proof**

The moving party has the burden of establishing that no genuine issue as to any material fact exists, and summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits and other documents submitted (1) when there are only latent doubts as to an affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate.

**6. Rules of Civil Procedure § 56.3 — damages claim — when summary judgment is appropriate**

Summary judgment on a claim of damages is appropriate where the moving party sufficiently establishes by competent documents that a liquidated amount is owing him, and the opposing party fails to show facts which dispute that evidence.

**7. Laborers' and Materialmen's Liens § 8.1 — motel builder — lien on property prior to construction lender's deed of trust — amount of lien — summary judgment proper**

Plaintiff was entitled to summary judgment in an action to have an arbitration award declared to be a specific lien on real property formerly belonging to defendant Spanish Inns superior to the deed of trust held by the construction lender where plaintiff, in support of its summary judgment motion, submitted affidavits and certified documents showing that it had duly perfected a lien on the property in question; this lien should relate back to the date of the first furnishing of labor, which occurred seven days before the construction loan deed of trust was recorded; the amount owing under the terms of the parties' contract was $195,936; defendants failed to controvert the above evidence or to show facts indicating that the alleged sum was not owing under the contract; and defendants did not indicate to the trial judge in any manner, pursuant to G.S. 1A-1, Rule 56(f), that they could not make a sufficient response to plaintiff's motion and supporting evidence of the amount of its claim.

APPEAL by defendants, Wachovia Realty Investments, Archie C. Walker, Trustee, and Wachovia Mortgage Company, pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, reported in 34 N.C. App. 341, 238 S.E. 2d 525, which affirmed summary judgment for plaintiff entered by *Snepp, J.,* at the 8 November 1976 Session of MECKLENBURG Superior Court.

In its complaint filed 26 June 1975, plaintiff, a North Carolina corporation, alleged three claims for relief against defendants — Spanish Inns Charlotte, Limited; Emil Ball, Jerry M. Whipperfurth, Richard R. Holchek, and R. C. Benson, individually and as general partners; Archie C. Walker as Trustee; Wachovia Realty Investments; William W. Tennent III, Trustee; United Leasing Corporation; and Wachovia Mortgage Company.

In its first claim for relief, the only claim involved on this appeal, plaintiff Frank H. Conner Company seeks to have an arbitration award declared to be a specific lien on real property formerly belonging to defendant Spanish Inns Charlotte, Limited, pursuant to the provisions of G.S. 44A-7 through -13, superior to the deed of trust held by the construction lender Wachovia Realty Investments.

The facts underlying this action, largely stipulated by the parties, are as follows:

On 4 October 1973, plaintiff and defendant Spanish Inns entered into a written contract under the terms of which plaintiff, as general contractor, agreed to construct a six-story motel upon real property owned by Spanish Inns for the sum of $1,664,465, to be paid by Spanish Inns in periodic installments as work progressed.

Pursuant to this contract, plaintiff began furnishing, as it contends, labor and material to the property of Spanish Inns on 17 October 1973. On this date, General Surveyors, Inc., a subcontractor of plaintiff, sent employees onto the site for the purpose of staking the building to be constructed by plaintiff. In performing this task, employees of General Surveyors cleared a portion of the building site and partially rough-staked the building. The rough-staking work consisted of locating and installing building-corner stakes at the west end of the building and building-line

stakes on the south side of the building. Such work was performed on 17, 18 and 22 October. The task of rough-staking the building and parking lot was completed on 1, 8, 20 and 21 November and on 7 December 1973, at a total job cost of $960, paid by plaintiff to General Surveyors. Of this amount, $345 was allocated for the services performed on 17, 18 and 22 October 1973.

On 29 October 1973, defendants Wachovia Realty Investments and Archie C. Walker, Trustee, caused to be filed with the Register of Deeds of Mecklenburg County a construction loan deed of trust upon said real property to secure a loan to defendant Spanish Inns not in excess of $2,320,000. Thereafter, Wachovia Realty Investments periodically advanced loan proceeds under said deed of trust as plaintiff performed construction work on the motel. The plaintiff, Conner Company, continued working on the project as general contractor and furnished or caused to be furnished labor and materials to the construction site until 6 May 1975, at which time the motel was substantially completed. However, due to a dispute between plaintiff and Spanish Inns, no payment was made to the plaintiff and no payments were advanced by defendant Wachovia Realty Investments to Spanish Inns for any of the work, labor or materials furnished after 1 January 1975.

On 6 May 1975, plaintiff filed a claim of lien under Chapter 44A of the General Statutes upon said real property in the amount of $543,919.58 due under the general contract. Pursuant to an arbitration clause in the construction agreement of 4 October 1973, a request for arbitration was made in early 1975 to settle disputes between plaintiff and defendant Spanish Inns as to the amount due. Proceedings for arbitration were held in August 1975 before a panel of three arbitrators selected in accordance with the rules of the American Arbitration Association. Prior to this time, on 26 June 1975, plaintiff instituted this separate action against Spanish Inns, Wachovia Realty Investments, et al., for the purpose of enforcing the lien filed on 6 May 1975. Under its first cause of action, the subject of the present appeal, plaintiff requested that its action be stayed pending the outcome of the arbitration proceedings. Thereafter, on 12 September 1975, the panel of arbitrators rendered an award in favor of plaintiff for the sum of $195,936 against Spanish Inns. Wachovia Realty In-

vestments, not a party to the arbitration proceedings, was immediately put on written notice of the award made in favor of plaintiff. This award rendered in favor of plaintiff against Spanish Inns was confirmed by an order and judgment of the Superior Court of Mecklenburg County on 23 February 1976. Wachovia Realty Investments, Archie Walker, Trustee, and Wachovia Mortgage Company, advisor to Wachovia Realty Investments, were neither parties to the arbitration proceedings nor to the separate civil action in which the arbitration award was confirmed.

On 9 August 1976, defendant Wachovia Realty Investments filed motion for summary judgment in the present case. On 23 September 1976, plaintiff Conner Company filed motion for summary judgment, moving that the arbitration committee's award against Spanish Inns in the sum of $195,936, with interest from 12 September 1975, be declared a lien on the Spanish Inns property, and that this lien be declared prior to the lien of Wachovia Realty Investments acquired by the deed of trust recorded 29 October 1973. On 5 November 1976, defendant Wachovia Mortgage Company filed a motion for summary judgment identical to that filed by defendant Wachovia Realty Investments on 9 August 1976.

Subsequent to the filing of this civil action on 26 June 1975, and prior to the hearing on the motions for summary judgment, defendant Wachovia Realty Investments foreclosed its deed of trust and purchased the Spanish Inns property at foreclosure sale for $2,320,000. On the date of the hearing on the motions for summary judgment, 12 November 1976, Wachovia Realty Investments was still the owner of said property.

After hearing the several motions for summary judgment, Judge Snepp entered an order dated 12 November 1976 denying defendants' motions for summary judgment, sustaining plaintiff's motion for summary judgment, and awarding judgment in favor of plaintiff in the sum of $195,936, with interest from 12 September 1975 plus costs. This order declared that amount to be a lien upon the Spanish Inns property, at that time owned by Wachovia Realty Investments, and found this lien to be superior to and ahead of the lien of Wachovia Realty Investments acquired by way of the construction loan deed of trust. From this order, defendants appealed to the Court of Appeals, and that court affirmed the order of the superior court in favor of plaintiff. De-

fendants appealed as of right by reason of a dissent by one member of the hearing panel.

*Connor, Lee, Connor, Reece & Bunn by David M. Connor and Cyrus F. Lee; Wade and Carmichael by J. J. Wade, Jr. for plaintiff appellee.*

*Berry, Bledsoe & Hogewood by Louis A. Bledsoe, Jr. and Dean Gibson; Womble, Carlyle, Sandridge & Rice by Kenneth A. Moser and Donald A. Donadio for defendant appellants.*

MOORE, Justice.

[1]    The primary issue on this appeal is whether a contractor's lien for the construction of a motel, arising under Article 2, Part 1, N.C. G.S. 44A-7 through -13, prior to its 1975 amendment, may relate back to and take effect from the date of the furnishing of services for the partial clearing and the on-site surveying and staking of the boundary lines of the building to be constructed by the contractor. The trial judge answered this question in the affirmative when he adjudged that plaintiff's lien was superior to the deed of trust executed for the benefit of Wachovia Realty Investments. The Court of Appeals affirmed his ruling. We affirm the decision of the Court of Appeals.

G.S. 44A-8, prior to its 1975 amendment, granted a contractor dealing directly with the owner of real property a lien upon that real property to which the contractor furnished "labor" or "materials" for purposes of construction on the real property. Prior to 1 July 1975, the effective date of the amendment, G.S. 44A-8 said, in defining those persons entitled to a lien:

> "Any person who performs or furnishes labor or furnishes materials pursuant to a contract, either express or implied, with the owner of real property, for the making of an improvement thereon shall, upon complying with the provisions of this article, have a lien on such real property to secure payment of all debts owing for labor done or material furnished pursuant to such contract."

G.S. 44A-7(2) defines "improvement" as follows: " 'Improvement' means all or any part of any building, structure, erection,

alteration, demolition, excavation, clearing, grading, filling, or landscaping . . . on real property."

The lien provided for by G.S. 44A-8 is inchoate until perfected by compliance with G.S. 44A-11 and -12, and is lost if the steps required for its perfection are not taken in the manner and within the time prescribed by law. *See Assurance Society v. Basnight*, 234 N.C. 347, 67 S.E. 2d 390 (1951). However, when a lien is validly perfected, and is subsequently enforced by bringing an action within the statutory period set forth in G.S. 44A-13(a), the lien will be held to relate back and become effective from the date of the first furnishing of labor or materials under the contract, and will be deemed perfected as of that time. G.S. 44A-10 (1969) codifies the established North Carolina case law doctrine of "relation back" as applied to mechanics', laborers' and materialmen's liens. That statute says:

> "*Effective date of liens.*—Liens granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the lien."

By virtue of this statute, a contractor's lien for all labor and materials furnished pursuant to a contract is deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site. *See Heating Co. v. Realty Co.*, 263 N.C. 641, 140 S.E. 2d 330 (1965); *Assurance Society v. Basnight, supra.*

In present case, there is no question that, in constructing the motel, plaintiff furnished "labor" and "materials" to the Spanish Inns property, and thereby was entitled to a lien thereon under G.S. 44A-8. Nor is there any dispute as to whether plaintiff duly and timely filed and perfected the lien under G.S. 44A-12, within 120 days after the last furnishing of labor and materials at the site of the improvement. Finally, there is no question regarding the validity of plaintiff's action to enforce the lien under G.S. 44A-13, brought within 180 days after the last furnishing of labor or materials to the site. It is, rather, the defendant's contention that, under G.S. 44A-10, the plaintiff's statutory lien rights did not attach and take effect until some date *after* the recordation on 29 October 1973 of Wachovia Realty Investments' construction deed of trust on the Spanish Inns property.

Defendants argue that former G.S. 44A-8 does not purport to secure payment of *all* debts owing for *all* work done pursuant to the construction contract between the owner and the contractor. Rather, defendants insist, the statute only provides for a lien securing payment of all debts owing for "labor" or "materials"; and, that surveying services are *not* lienable under the former statute. Therefore, G.S. 44A-10 must be read to relate back only to that date when the contractor first provided "labor" or "materials" of the type protected by G.S. 44A-8 to the site. Since the only work furnished by plaintiff prior to 29 October 1973 (the date of defendants' recordation of the deed of trust) was, as defendants contend, "surveying services", plaintiff's lien cannot relate back to a date prior to 29 October and must therefore be subordinate to defendants' deed of trust.

Defendants base their argument on a comparison of former G.S. 44A-8, the controlling statute in this case, and amended G.S. 44A-8, effective 1 July 1975. The amended statute reads as follows:

> "*Mechanics', laborers' and materialmen's lien; persons entitled to lien.*— Any person who performs or furnishes labor or professional design or surveying services or furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished pursuant to such contract."

Defendants cogently argue that, since the amended G.S. 44A-8 specifically provides for a lien for the furnishing of "surveying services", former G.S. 44A-8 did not contemplate that such work be lienable under its terms. Instead, defendants insist, former G.S. 44A-8 provided a person with a lien only if he performed "labor" or furnished "materials" to the improvement. Defendants further contend that "labor" under the former statute has been defined as "manual, unskilled work of an inferior and toilsome nature," *accord, Stephens v. Hicks,* 156 N.C. 239, 72 S.E. 313 (1911), and that the work performed by General Surveyors,

Inc., for the plaintiff on 17, 18 and 22 October was not of this sort; therefore plaintiff's lien cannot relate back to those dates.

[2] Central to defendants' arguments is the assumption that prior to 1 July 1975 "labor" did not include the clearing, surveying and staking of the lines of a building prior to its construction. Assuming defendants' contention that surveying services were nonlienable under Article 2, Part 1, of G.S. 44A, prior to 1 July 1975 (and without deciding whether the 1975 additions amended or merely clarified the former provision), we must look to the actual nature of the work performed by General Surveyors, rather than to any title, to determine whether the work in this case was labor performed under the former statute.

The nature of the work performed by General Surveyors, Inc., for plaintiff on 17, 18 and 22 October is undisputed. The parties stipulated that ". . . General Surveyors, Inc., in performing the work cleared a portion of the building site and partially roughstaked the building site which consisted of locating and installing building corner stakes at the west end of the building, plus building line stakes on the south side of the building. . . ."

Plaintiff contends that this work performed by General Surveyors, Inc., and furnished by plaintiff, was "labor" under former G.S. 44A-8 and -10. Defendants contend that it was not "labor", but rather was nonlienable professional "surveying services".

The contract dated 4 October 1973 between the plaintiff, as general contractor, and Spanish Inns, as owner, was a construction contract and not a contract for the rendering of professional design or surveying services. The partial clearing and staking of the building on the site is the first overt essential on-site task in the actual construction of the improvement called for in the construction contract. Such work goes beyond the stage of the mere planning or preparation for the "making of the improvement." Rather, it is an integral part of the construction of the building itself, and thus is "labor" performed for the "making of an improvement."

It should be noted here that General Surveyors was not employed by the contractor to perform traditional surveying work unrelated to the construction contract. In fact, General Surveyors had already surveyed the property lines for Spanish

Inns, Wachovia Realty Investments and Lawyers Title in August of 1973.

We cannot accept defendants' argument that "labor" in the statute must be construed to read "manual, unskilled work of an inferior and toilsome nature."

In *Stephens v. Hicks, supra,* this Court defined a mechanic or laborer as "a person skilled in the practical use of tools; a workman who shapes and applies material in the building of houses or other structures mentioned in the law; 'one actually employed with his own hands in constructive work' . . . ." From this case it is clear that the term "labor" in former G.S. 44A-8 is not restricted to "unskilled work of an inferior and toilsome nature."

A further reason for rejecting defendants' proposed limited definition of "labor", and for broadening the definition offered by prior case law, is that the cases defining the term are over sixty years old, and were written at a time prior to the sophistication of construction methods. To limit the meaning of "labor" in the manner urged by defendant would now be unacceptable, for such a definition of the term would eliminate from the scope of the statute much skilled construction work clearly intended by the 1969 enactment of G.S. 44A-8 to be within its range (*e.g.*, the skilled operation of heavy excavation machinery, cranes, etc.; bricklaying and masonry work; plastering; electrical wiring and plumbing, all of which involve technical skill and expertise).

Finally, to so limit the definition of "labor" to that suggested by defendant would impose an impermissible burden on the contractor. The contractor has made an indivisible contract for construction with the owner, and we cannot demand of the contractor that it keep separate records regarding that work which is "labor" under a proposed restricted definition of that term, and that work which is not. As this Court has said, "The plaintiff having built a house for the defendant was entitled to his mechanic's lien therefor, not merely for the value of the labor expended but for the contract price of the house. . . . When the contractor undertakes to put up a building and complete the same, the contract is indivisible and his 'mechanic's lien' embraces the entire outlay, whether in labor or material, being for 'work done on the premises,' [Rev., s. 2016] *i.e.* for the betterments on it. The

'laborer's lien' is solely for labor performed. The mechanic's lien is broader and includes the 'work done,' *i.e.* the. 'building built' or superstructure placed on the premises. [Citations omitted.]" *Broyhill v. Gaither*, 119 N.C. 443, 26 S.E. 31 (1896). *See Isler v. Dixon*, 140 N.C. 529, 53 S.E. 348 (1906).

Hence, we hold that the partial clearing and staking of the building lines was "labor" under G.S. 44A-8.

[3] Having held that the partial clearing and staking of building lines is "labor" under G.S. 44A-8, we must next determine, under G.S. 44A-10, the date from which plaintiff's lien took effect. Defendants cite several cases from other jurisdictions, collected in 1 A.L.R. 3d 822, which hold that the staking of building lines does not amount to a "commencement of building" under the particular mechanics' lien statutes in those jurisdictions. These cases were determined under statutes which state, in effect, that mechanics' liens accrue from the time work on the building or improvement is "commenced". This State's accrual statute, G.S. 44A-10, is not stated in these terms, but rather provides that a lien shall accrue as of the time of the "first furnishing of labor or materials at the site." To this extent, our accrual statute is unique among the fifty states. Although the statute contains no express requirement that there be a "visible commencement" of the building or improvement, the authors of a Wake Forest Law Review article think this is an implied requirement:

> "[I]t should be noted that insofar as the lien rights of laborers and materialmen are concerned, the statutory definition of the term 'improve' [G.S. 44A-7(1)] includes undertakings, the commencement of which will likely be apparent upon an examination of the construction site. It was the intent of the draftsmen that persons interested in the subject lot or tract should be able to examine the property and ascertain the extent to which it was possibly encumbered." 12 Wake Forest L. Rev. 283, 321, *Mechanics' Liens for the Improvement of Real Property: Recent Developments in Perfection, Enforcement, and Priority. See also* Humphrey, *Position, Priorities and Protection of Parties and Statutory Liens* in N.C. Bar Ass'n Foundation Institute on Troubled Real Estate Ventures and New Use and Ownership Concepts, IV-1 through IV-23 (May 1975).

We agree that this is a reasonable interpretation of the statute, and accordingly hold that G.S. 44A-10 implies that there be a visible commencement of the improvement. But, with this added requirement we believe and so hold that the partial clearing of the site and the staking of the outlines of the building, the "first furnishing of labor" in this case, constitute a "visible commencement of an improvement" sufficient to put a prudent man on notice that a possible improvement is underway and that the property might be subject to a lien under G.S. 44A-8.

Thus, we hold that plaintiff has a lien under G.S. 44A-8 for the balance due under its contract with Spanish Inns for the construction of the motel and that the clearing and staking of building lines constituted the "first furnishing of labor . . . at the site," so that plaintiff's lien relates back to and takes effect from the date this labor was first performed.

[4] In their second assignment of error defendants Wachovia Realty Investments, Archie C. Walker, Trustee, and Wachovia Mortgage Company contend that the arbitration award of $195,936 against Spanish Inns and in favor of plaintiff is not binding on them in this action. Defendants reason that since they were not parties to the arbitration proceedings and the earlier civil action by plaintiff for the confirmation of the arbitration award (termed by defendants an action "to perfect its lien"), they were not given a right to be heard concerning the amount of the lien, and therefore they cannot be held liable for this specified amount.

Suffice it to say that defendants did have an opportunity to be heard, and that this opportunity was afforded them in the present civil action to enforce the lien. A mechanics' lien under Article 2, Part 1, of Chapter 44A, is perfected "upon filing of claim of lien pursuant to G.S. 44A-12," and is then deemed to relate back to the time of the first furnishing of labor or materials. See G.S. 44A-11. In the present action, the plaintiff filed its claim of lien for $543,919.58 on 6 May 1975 in accordance with G.S. 44A-12. Plaintiff's lien was then deemed perfected, and such lien related back to 17 October 1973, the date plaintiff first furnished labor to the site. On 26 June 1975, plaintiff instituted this action to enforce this lien in accordance with G.S. 44A-13. That statute, in part, provides:

"*Action to enforce lien.*— (a) Where and When Action Instituted.— An action to enforce the lien created by this Article may be instituted in any county in which the lien is filed. No such action may be commenced later than 180 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the lien. . . .

(b) Judgment.— Judgment enforcing a lien under this Article may be entered for the principal amount shown to be due, not exceeding the principal amount stated in the claim of lien enforced thereby. The judgment shall direct a sale of the real property subject to the lien thereby enforced."

G.S. 44A-13(b), Judgment, contemplates that a defendant has the right to contest the amount of plaintiff's lien during the enforcement proceedings, and not prior thereto. In *Widenhouse v. Russ*, 234 N.C. 382, 67 S.E. 2d 287 (1951), the Court said that, in an action to enforce a materialmen's lien under former G.S. 44-6, ". . . it is material to ascertain and determine what amount, if any, was due by the owner . . . to the contractor. . . . [T]he owner may . . . set up, as a defense, any actual damages caused by the failure of the contractor to complete the building in accordance with the terms of the contract."

Defendant Wachovia Realty Investments was a proper party to this action at the time it was commenced, and a necessary party at the time of the hearing itself (because it then owned the property). *Childers v. Powell*, 243 N.C. 711, 92 S.E. 2d 65 (1956); *Assurance Society v. Basnight, supra.* As parties to this action, defendants had the right and the opportunity to be heard on the issue of the amount of the lien.

[7] The question remaining is whether summary judgment was properly granted the plaintiff, not only on the priority of plaintiff's lien, but also on the amount of that lien.

In present case, plaintiff submitted a motion for summary judgment on its first cause of action, alleging and offering the pleadings, affidavit and certified documents to show that it had duly perfected a mechanics' lien on the Spanish Inns property; that this lien should relate back to 17 October 1973, the date of the first furnishing of labor, and be deemed superior to the deed of trust held by defendant Wachovia Realty Investments; and

that the amount owing under the terms of the contract was $195,936, with interest from 12 September 1976. In support of this last point, plaintiff submitted the initial notice of claim of lien of 6 May 1975, the certified award of $195,936 of the arbitrators dated 4 September 1975, and the court order of confirmation of this award and judgment against Spanish Inns.

In their cross motions for summary judgment, defendants simply prayed for relief in their favor "in accordance with Rule 56 of the Rules of Procedure." Submitted with these motions were affidavits by the surveyors for General Surveyors; an affidavit by bank officer J. Wayne Roquemore; the complaint, answer and amended answer together with attached exhibits; and admissions and answers to written interrogatories filed by both plaintiff and defendants. The cross motion itself contains no response to plaintiff's allegations and evidence concerning the amount due under the contract. Among the documents submitted by defendants in support of their cross motion no affidavits or certified documents appear which set forth specific facts which would question plaintiff's evidence of the amount owed. The defendants raised no counterclaim in their answer to plaintiff's complaint, nor did they set up any affirmative defenses as regards the issue of damages. The only aspect of defendants' cross motions which addresses the issue of damages is the bare denial, contained in the answer to plaintiff's complaint, that the alleged sum was owing.

Rule 56(c) of the North Carolina Rules of Civil Procedure provides, in pertinent part that, upon motion, summary judgment shall be rendered forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

Rule 56(e) provides *inter alia*: ". . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him." (Emphasis added.) *See also Nasco Equipment Co. v. Mason*, 291

N.C. 145, 229 S.E. 2d 278 (1976); *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

Rule 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

A motion for summary judgment must be adequately supported. It must demonstrate, by affidavit, deposition, or otherwise, that there is no genuine issue of fact. *See* Rule 56(c). Rule 56(e) requires that if a defendant, opposing a plaintiff's motion, has a plausible defense as regards an issue, he must assert it, or he must utilize Rule 56(f) to show the court why he cannot oppose it. When the movant's affidavits do not adequately support the motion, there may be no reason to file opposing affidavits. *See Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972). However, when the moving party presents an adequately supported motion, the opposing party must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case, or otherwise suffer a summary judgment. *See Nasco Equipment Co. v. Mason, supra.*

[5] The moving party has the burden of establishing that no genuine issue as to any material fact exists. This Court, in an opinion by Chief Justice Sharp, has held that summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits and other documents submitted (1) when there are only latent doubts as to an affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate. *Kidd v. Early, supra.*

In present case, plaintiff supported his motion for summary judgment for a specified sum with a certified arbitration award for $195,936, and a court order of confirmation of that award and judgment against Spanish Inns. This amount was determined by a three-man board of arbitrators as due under the terms of the construction contract. Coupled with the confirmation order by the

superior court, the award amounts to an adjudication of the amount owing under the construction contract. Since defendants were not parties to the arbitration proceeding, the award is not binding on them. *See* 5 Am. Jur. 2d, Arbitration and Award § 149, p. 631. However, on a motion for summary judgment in this action to enforce the mechanics' lien, this arbitrated amount, approved by the superior court, will serve as factual evidence of the amount of the lien, and is adequate support for the claimed amount. This Court has held that, in ruling on a motion for summary judgment, the trial court may consider admissions, depositions, answers to interrogatories, affidavits, and, "any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Thus, the certified arbitration award and confirmation order may be considered by the trial judge in ruling on plaintiff's motion for summary judgment on the amount of its lien. Due to the nature of the evidence, there could only be latent doubts as to its credibility or correctness, and it would be incumbent on defendants to come forward with evidence disputing its correctness. Plaintiff's evidence, absent any evidence to the contrary, would be sufficient to show that there is no material issue of fact as regards the amount owing plaintiff under the contract.

Since the defendants failed to support their general denial of plaintiff's factually supported claim for the amount of the lien, and failed to utilize Rule 56(f) with regard to this issue, the remaining question in this case is whether summary judgment for the plaintiff was appropriate on the issue of damages—in this case the amount of the lien.

Rule 56(a) contemplates that summary judgment may be granted for any type of claim, counterclaim, or cross-claim, or for a declaratory judgment, so long as the issue to be determined is one which lends itself to summary adjudication. There is nothing inherent within the summary judgment procedure which might preclude a summary judgment for the damages or remedies sought, so long as the requirements of the procedure are met.

Under Rule 56(d) summary judgment may be granted, not only as to an issue of liability, but also as to "the amount of damages or other relief" where such issues are not in controver-

sy. Concerning this matter, 6 Moore, Federal Practice § 56.17[18] (2d Ed. 1976), says: "If all the material issues of fact underlying a claim, including the amount of damages, are established and on the basis of applicable substantive law the claimant is entitled to a judgment, a summary judgment including the award of damages may be appropriately awarded. But where, liability of the defendant being established as a matter of law, there is a genuine dispute as to the amount of damages, a summary judgment, interlocutory in character, may be rendered for the claimant solely on the issue of liability, and the amount of damages left for determination in the appropriate manner."

In *Golden Oil Co., Inc. v. Exxon Co.*, USA, 543 F. 2d 548 (5th Cir. 1976), the federal court held that summary judgment on an account is proper where the moving party sets out a detailed statement of account and the opposing party fails to adduce specific, legally cognizable items of debit or credit not included in the moving party's statement demonstrating that the amount claimed due is inaccurate. In *Douglass v. First National Realty Corp.*, 437 F. 2d 666 (App. D.C. 1970), the court held that it was proper to grant a motion for summary judgment for damages for breach of a contract for architectural services, where the defendant failed to contest whether plaintiff had suffered any damages, and where the damages were computable according to a formula within the contract. And, in *Freeman v. Continental Gin Company*, 381 F. 2d 459 (5th Cir. 1967), summary judgment was held proper for the amount owing a seller under a contract for the delivery of machinery where the terms of the contract were unambiguous. *See also*, *United States v. Natale*, 99 F. Supp. 102 (D. Conn. 1950); *Sloane v. Land*, 20 FR Serv. 761 (DCSDNY 1954); *United States v. Wood*, 61 F. Supp. 175 (D. Mass. 1954).

For cases in other jurisdictions holding summary judgment for damages appropriate, *see generally* 73 Am. Jur. 2d, Summary Judgment § 4, p. 727, and references therein; *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y. 2d 456, 161 N.Y.S. 2d 90, 141 N.E. 2d 590 (action to recover contract price); *E. J. Marco & Bros. v. Canfield*, 286 App. Div. 1059, 144 N.Y.S. 2d 771; *Petit v. Ervin Clark Constr. Co.*, 243 Iowa 118, 49 N.W. 2d 508.

In *Kessing v. Mortgage Corp., supra*, this Court, though it modified the lower court's award, approved a summary judgment

for damages due a borrower in an action to recover usurious interest paid to defendant.

In all of the above cases the moving parties established by means of affidavits or other admissible documents that an established sum was owing them as a matter of law. The opposing parties either failed to dispute such allegations, or else presented claims or defenses utterly baseless in fact.

[6] The granting of summary judgment is proper if affidavits and other papers in support of the moving party are sufficient to sustain a judgment in his favor, and his opponent does not, by affidavit or otherwise, show facts sufficient to present a triable issue of fact. Accordingly, we hold that summary judgment on a claim of damages is appropriate where the moving party sufficiently establishes by competent documents that a liquidated amount is owing him, and the opposing party fails to show facts which dispute that evidence. In such cases there is no triable issue of fact concerning damages due the moving party.

[7] In present case, plaintiff moved that it be entitled to a lien on the property of Spanish Inns in the amount of $195,936, with interest. In support of this motion, plaintiff submitted a certified document and a court order which provided sufficient factual support to plaintiff's claim that this sum was determined under the terms of the contract and was thereby due under the terms of the contract. This evidence, being credible, was sufficient to carry plaintiff's burden of proof on the issue of damages. The defendants, in their cross motion for summary judgment, failed to controvert this evidence or to show facts indicating that the alleged sum was not owing under the contract. Nor did they indicate to the trial judge in any manner, pursuant to Rule 56(f), that they could not make a sufficient response to plaintiff's motion and supporting evidence of the amount of its claim. Defendant not having contested plaintiff's allegations and evidence concerning damages, the trial judge, based on the particular evidence of indebtedness before him, could conclude that there was no genuine issue of material fact, and could therefore appropriately grant summary judgment for the amount of $195,936, with interest, in plaintiff's favor and against the land held by defendants. Rule 56(c); Rule 56(e); *Kidd v. Early, supra.*

Defendants' second assignment is overruled.

We have considered defendants' other assignment of error, but find it to be without merit.

For the reasons stated above, the decision of the Court of Appeals is affirmed.

Affirmed.